UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN B. ADRAIN, | § |
| | § |
| Plaintiff, | § |
| VS. | § |
| | § |
| SUPERCHIPS, INC., | § |
| DIABLOSPORT, LLC, | § |
| EDGE PRODUCTS OLDCO INC., | § |
| STREET & PERFORMANCE | § |
| ELECTRONICS INC., | § |
| CRANE TECHNOLOGIES GROUP | § CIVIL ACTION NO. H-04-4117 |
| INC., | § |
| BULLY DOG TECHNOLOGIES LLC, | § |
| BD DIESEL PERFORMANCE, | § |
| COBB TUNING, LLC, | § |
| COMPETITION CAMS, INC., | § |
| and | § |
| SUPERCHIPS CUSTOM TUNING, LLC, | § |
| | § |
| Defendants. | § |

## MEMORANDUM AND ORDER

In this patent infringement case, both parties have submitted proposed claim constructions, and Defendants have moved for summary judgment on all of Plaintiff's claims. After considering the parties' filings and arguments at the claim construction hearing held on February 8, 2006; the report of Court-appointed expert Craig Lundell; and the applicable law, the Court hereby **ADOPTS** the following claim construction, **GRANTS** Defendants' motions for summary judgment, and **DISMISSES WITH PREJUDICE** all of Plaintiff's claims.

I.  BACKGROUND

The patent at issue describes a device that allows vehicle programmers to modify a vehicle's controlling computer program, thereby altering the vehicle's performance.

1

The computer that controls a vehicle is called the engine control module (ECM). A modern ECM contains an electronically erasable programmable read-only memory (EEEPROM) chip, which contains the program that controls the vehicle's operation. Early memory chips were not electronically erasable; to reprogram an early ECM, therefore, a programmer had to remove its memory chip (known as an erasable programmable read-only memory, or EPROM, chip) and replace it with an after-market chip designed to provide a specific type of performance modification. In 1996, after the introduction of EEPROM chips, Plaintiff obtained the patent at issue in this case, U.S. Patent No. 5,523,948 ("the '948 patent"),[1] which describes a device that allows a user to reprogram an ECM without physically removing and replacing the EEPROM chip. Plaintiff now claims that Defendants are engaged in the manufacture and sale of products that infringe the '948 patent.

## II.    CLAIM CONSTRUCTION

### A.    Legal Standard

Adjudication of a patent claim is a two-step process. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). First, the Court determines, as a matter of law, the meaning of the claims. *Id.* at 388 ("The construction of written instruments is one of those things that judges often do and are likely to do better than jurors unburdened by training in exegesis."). Second, the trier of fact determines whether the accused product infringes the patent, as construed by the Court. *Id.* at 377 ("[T]here is no dispute that infringement cases today must be tried to a jury, as their predecessors were more than two centuries ago.").

---

[1] The '948 patent was predated by several other patents, issued to Plaintiff, which described earlier incarnations of the invention.

2

"In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language [that] the patentee chose to use to 'particularly point[ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention.'" *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (quoting 35 U.S.C. § 112 ¶ 2). "Generally, there is a 'heavy presumption' in favor of the ordinary meaning of claim language as understood by one of ordinary skill in the art." *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001) (quoting *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999)). The presumption may be overcome under two circumstances: "(1) where the patentee has chosen to be his own lexicographer, or (2) where a claim term deprives the claim of clarity such that there is 'no means by which the scope of the claim may be ascertained from the language used.'" *Id.* (quoting *Zebco*, 175 F.3d at 990).

"Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). The Court must take care, however, to avoid reading "limitations appearing in the specification . . . into [the] claims." *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989).

**B.    Claim 1**

Claim 1, with the disputed terms in bold type, reads as follows:

> **An improvement in a vehicle** having a predetermined combination of operational elements for controlling vehicular operation according to at least one originally provided program, said predetermined combination of operational elements being defined in a fixed system having a bus with a

>predetermined operable design for operation of said vehicle, said operational elements of said system being controlled by an electronic control module according to said originally provided program, said electronic control module being coupled to said bus and exteriorly accessible for at least diagnostic purposes, said improvement comprising:
>
>>a module **externally coupled to said bus** for arbitrarily reconfiguring a programmed control of said electronic control module in which said electronic control module is employed, said module for use in selecting at least one additional operational protocol not originally included within said fixed system design, said module comprising:
>>
>>at least one preprogrammed memory, said preprogrammed memory for storing at least one additional program for use in controlling operation of said vehicle in a distinguishable protocol in addition to those provided by said originally provided program and **in lieu of control provided by said originally provided program**; and
>>
>>**a control coupled only to said preprogrammed memory for selectively communicating said preprogrammed memory to said electronic control module**, operation of said vehicle being changed by said control according to said additional program in said selected preprogrammed memory in lieu of said originally provided program,
>>
>>whereby said vehicle is caused to operate in a protocol selected from at least one alternative available in said preprogrammed memory.

### 1. The *Hypertech* decision.

In 2002, the U.S. District Court for the District of Utah issued a ruling construing the claims of the '948 patent in the context of a case brought by Plaintiff against an alleged infringer not a party to the instant suit. *See Adrain v. Hypertech, Inc.*, No. 2:98CV37C, 2002 WL 368468 (D. Utah March 6, 2002). The Utah court held, *inter alia*, that the "control coupled only" language of claim 1 meant that the control could be connected to nothing but the preprogrammed memory. *Id.* at *4-*5. Defendants now

argue that Plaintiff is collaterally estopped from advocating any construction of claim 1 other than that adopted by the Utah court.

"Because the application of collateral estoppel is not a matter within the exclusive jurisdiction of the [U.S. Court of Appeals for the Federal Circuit, that] court applies the law of the circuit in which the district court sits." *Vardon Golf Co. v. Karsten Mfg. Corp.*, 294 F.3d 1330, 1333 (Fed. Cir. 2002) (internal quotation marks omitted); *see also Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269 n.4 (5th Cir. 1986) (holding that the collateral effect of a federal court decision is a question of federal law). In this circuit, a prior federal decision must satisfy three criteria before it is given collateral effect:

> 1) the prior federal decision must have resulted in a "judgment on the merits"; 2) the same fact issues sought to be concluded must have been "actually litigated" in the federal court; and 3) the disposition of those issues must have been "necessary to the outcome" of the prior federal litigation.

*Falcon v. Transportes Aeros de Coahuila, S.A.*, 169 F.3d 309, 312 (5th Cir. 1999) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)).

The parties agree that, after the Utah court issued its claim construction, Plaintiff stipulated to the entry of final judgment on the issue of infringement in order to proceed with an immediate appeal. The Federal Circuit vacated the judgment and remanded the case, which was then settled before a new judgment could be rendered. Defendants argue, however, that the Utah court's construction of the "control coupled only" claim nonetheless binds Plaintiff, because (1) he did not appeal that construction, and (2) the Federal Circuit did not expressly vacate or reverse that construction. (*See* Defs.' Reply at 5 ("[Plaintiff's] argument ignores the fact that [his] appeal was from a final judgment and

5

that the unappealed or non-reversed portions of that final judgment became law of the case and were final.").)

Defendants are incorrect. First, the Federal Circuit clearly stated that the district court's judgment "was premised on the 'in transit' claim construction issue." *Adrain v. Hypertech*, 70 Fed. Appx. 557, 561 (Fed. Cir. 2003). The judgment was not, in other words, premised upon the "control coupled only" construction, which therefore does not satisfy the Fifth Circuit's criterion of necessity to the outcome of the previous case. Moreover, although the Federal Circuit did not expressly reverse the "control coupled only" construction, it did explicitly vacate the final judgment issued by the Utah court. *Id.* ("[T]his court vacates that judgment and remands the case for further proceedings consistent with this opinion."). Thus, no final judgment exists in the Utah case, and therefore the Utah court's construction does not collaterally estop Plaintiff from advocating a different construction in this Court.

### 2. Construction of the disputed terms in claim 1.

#### a. "An improvement in a vehicle."

Claim 1 of the '948 patent is what is known as a *Jepson* claim, which includes (1) a preamble that sets forth all of the conventional elements of an invention and (2) a subsequent phrase describing the new or improved portion of the claimed invention. *See Jepson v. Coleman*, 50 C.C.P.A. 1051 (C.C.P.A. 1963); *see also* 37 C.F.R. § 1.75(e):

> Where the nature of the case admits, as in the case of an improvement, any independent claim should contain in the following order: (1) a preamble comprising a general description of all the elements or steps of the claimed combination which are conventional or known, (2) a phrase such as "wherein the improvement comprises," and (3) those elements, steps and/or relationships which constitute that portion of the claimed combination which the applicant considers as the new or improved portion.

6

The United States Court of Appeals for the Federal Circuit has held that "*Jepson* claiming generally indicates intent to use the preamble to define the claimed invention, thereby limiting claim scope." *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). The phrase "an improvement in a vehicle" is the preamble to the '948 claim.

Plaintiff argues that the phrase should be read to mean "a module combined with a vehicle to create an improvement to the vehicle." Defendants contend that "an improvement in a vehicle" means "a device that is incorporated in, and becomes a part of, a vehicle." The crux of the parties' dispute concerns whether or not the invention is intended to become a permanent fixture inside of the vehicle. Mr. Lundell has answered this question in the affirmative, recommending that the Court adopt the following construction: "a module that becomes part of a vehicle and is intended to remain part of the vehicle during use."

As Mr. Lundell notes, during the prosecution of a previous patent, which described an earlier version of the invention at issue here, Plaintiff distinguished that device from the prior art by noting that the prior art was "not an improvement in a vehicle, but a stationary piece of shop equipment." *See* Amendment After Final dated December 30, 1991, at 7 (Bates No. JBA 008689) (cited in Superchips' Claim Constr. Br. at 10). That statement had – and has – the effect of narrowing the range of claimed devices. *Cf. Covad*, 262 F.3d at 1273-74. The Court finds, therefore, that although the patented invention may, like any other automobile part, be removed after installation, the patent and prosecution history, when read together, contemplate that the invention will remain part of the vehicle once attached. Accordingly, the Court adopts Mr. Lundell's

7

recommended construction and holds that "an improvement in a vehicle" means "a module that becomes part of a vehicle and is intended to remain part of the vehicle during use."

### b. "Externally coupled to said bus."

Plaintiff argues that this phrase means, in the context of the '948 patent, "externally coupled to said bus via any of a number of known means, including, but not limited to, a diagnostic port or the engine wiring harness." Defendants contend that the appropriate construction is "externally coupled to said bus through a diagnostic port." Mr. Lundell's recommended construction is "externally coupled to said bus via either the diagnostic port or the wiring harness."

The Court finds Mr. Lundell's construction to be the appropriate reading of the term. As Mr. Lundell points out, the '948 patent specification discloses two embodiments, one using the diagnostic port and the other using the wiring harness. Because the claim language can plausibly be read as encompassing both embodiments, the Court adopts the following construction of "externally coupled to said bus": "externally coupled to said bus via either the diagnostic port or the wiring harness."

### c. "A control coupled only to said preprogrammed memory for selectively communicating said preprogrammed memory to said electronic control module."

According to Plaintiff, this phrase means "a control coupled to a physical structure containing at least one additional program, for the sole purpose of communicating contents of that preprogrammed memory to the ECM." Defendants advance the following construction: "a control physically connected only to the preprogrammed memory and to nothing else, for the purpose of physically switching a

8

physical memory to a physical computer, not merely transferring the program contents of that memory to another memory." The first point of contention here is whether the word "only," as situated within the phrase at issue, refers to the elements being connected or to the purpose of the connection. Plaintiff argues that the word indicates that the coupling is intended only *to communicate the memory*. Defendant contends that the claim allows coupling only *between the control and the preprogrammed memory*. The second disputed issue is whether the memory conveyed consists of the contents of the memory module (*i.e.*, the software) or the physical memory itself (*i.e.*, the hardware). Plaintiff takes the former position, while Defendant advances the latter.

Mr. Lundell recommends that "only" be read to refer to the purpose of the connection and not to the components involved. He suggests that the Court construe "only . . . for" to mean "for the sole purpose of." The Court agrees with Mr. Lundell's construction, which – unlike Defendants' interpretation – has the advantage of encompassing the embodiments described in the patent.

Mr. Lundell further recommends that the Court read "selectively communicating said preprogrammed memory" to mean "the transfer of information from the preprogrammed memory to the electronic control module at different times and for different purposes." This construction permits the transfer of either the contents of a memory or the physical memory itself and is consistent with the Court's holding that the device must be permanently affixed to the vehicle. Accordingly, the Court adopts the following construction: "a control coupled to the preprogrammed memory for the sole purpose of permitting the transfer of information from the preprogrammed memory to the electronic control module at different times and for different purposes."

    **d.**  **"In lieu of control provided by said originally provided program."**

  Plaintiff argues that the phrase "in lieu of," as used in claim 1 of the '948 patent, should be read to mean "instead of." Defendants maintain that "in lieu of" means "completely replacing." Defendants' reading would require that no element of the originally provided program remain after the transfer of the preprogrammed memory from the adapter module to the ECM. Mr. Lundell takes a less restrictive approach, agreeing with Plaintiff and advocating the following interpretation: "in place of or instead of control provided by all or part of said originally provided program." As noted above, the Court prefers a claim construction that does not exclude the specified embodiments. Because Mr. Lundell's reading permits all of the embodiments set forth in the patent, the Court adopts his construction.

  **C.**  **Claim 19**

Claim 19, with the disputed terms in bold type, reads as follows:

A method of controlling an automotive computer comprising the steps of:

> providing control signals to an engine from a first computer, said control signals comprising engine operating parameters;
>
> providing at least one originally provided programmed mode for operating said engine from at least one originally provided memory coupled to said first computer;
>
> **communicating a superseding signal to a bus coupled to said first computer and said at least one originally provided memory through a diagnostic/emulation port or harness coupled to said bus from an adapter module, said superseding signal to alter control of said engine by said first computer**;
>
> **selectively controlling said engine by means of said first computer through at least one additional programmed**

> **mode provided by said adapter module, said additional programmed mode not being originally included in said originally provided memory**.

The Court construes the disputed terms as follows.

> **1.   "Communicating a superseding signal to a bus coupled to said first computer and said at least one originally provided memory through a diagnostic/emulation port or harness coupled to said bus from an adapter module, said superseding signal to alter control of said engine by said first computer."**

Plaintiff argues that this phrase should be read to mean "communicating or sending a signal, from an adapter module through a vehicle diagnostic/emulation port or wiring harness, to a bus connected to the vehicle computer, that alters the way the vehicle computer controls the engine."  Defendants offer a competing interpretation: "communicating a superseding signal from the adapter module through the diagnostic/emulation port or harness to the vehicle computer, overriding the control signals that are simultaneously being sent from a first computer to the engine, resulting in the alteration of the control of the engine by the first computer."  The essence of the parties' dispute is the definition of "superseding"; Defendants insist that this term requires that both the originally provided memory and the additional preprogrammed memory simultaneously send signals to the ECM, with the signal from the additional memory overriding the signal from the originally provided memory.

Mr. Lundell has recommended a construction of the disputed phrase as a whole but has not expressed an opinion on this particular issue. The Court notes, however, that Mr. Lundell's reading of claim 1, which the Court has adopted, permits the communication either of the contents of a memory or of the physical memory itself.  If the physical memory contained in the adapter module is communicated to the ECM,

11

replacing the originally provided memory (which, according to all parties, is transferred to the adapter module in this embodiment of the invention), then it is not possible for both memories to send signals to the ECM at once. The Court therefore adopts Mr. Lundell's recommended construction, which permits either simultaneous signaling or signaling only by the additional memory: "communicating a superseding signal from an adapter module to a bus coupled to the first computer and the originally provided memory, with the result of altering control of the engine by the first computer."

> **2. "Selectively controlling said engine by means of said first computer through at least one additional programmed mode provided by said adapter module, said additional programmed mode not being originally included in said originally provided memory."**

Plaintiff advocates the following construction: "selectively changing the vehicle computer through the user's use of at least one additional program in the adapter module, while preserving the originally provided program mode in some location." Defendants argue that the proper interpretation is "choosing either the originally provided programmed mode or the additional programmed mode, both of which are part of the automotive computer, such that the operator of the automotive computer can select between the two modes by inserting or removing the adapter module." Defendants' construction would require, *inter alia*, that mode selection be accomplished by physical attachment or removal of the module.

The Court disagrees with Defendants' proposed limitation, finding Mr. Lundell's recommended construction more appropriate: "making a decision to switch control of the engine from the programmed mode provided in the originally provided memory to the additional programmed mode provided by the adapter module, with the adapter module

remaining coupled to the bus such that control of the engine can be switched back and forth between the originally provided programmed mode and the additional programmed mode."[2]  This construction – unlike Defendants' proposed reading – is consistent with Defendants' contention, and the Court's ruling, that the language of the patent requires that the device be permanently attached to the vehicle.  The Court therefore adopts Mr. Lundell's construction.

### D. Conclusion

The Court hereby adopts the following constructions of the disputed terms:

| Claim 1 ||
|---|---|
| **Term** | **Construction** |
| "an improvement in a vehicle" | "a module that becomes part of a vehicle and is intended to remain part of the vehicle during use" |
| "externally coupled to said bus" | "externally coupled to said bus via either the diagnostic port or the wiring harness" |
| "a control coupled only to said preprogrammed memory for selectively communicating said preprogrammed memory to said electronic control module" | "a control coupled to the preprogrammed memory for the sole purpose of permitting the transfer of information from the preprogrammed memory to the electronic control module at different times and for different purposes" |
| "in lieu of control provided by said originally provided program" | "in place of or instead of control provided by all or part of said originally provided program" |
| Claim 19 ||
| **Term** | **Construction** |
| "communicating a superseding signal to a bus coupled to said first computer and said at least one originally provided memory through a diagnostic/emulation port or harness coupled to said bus from an adapter module, said superseding signal to alter control of said engine by said first computer" | "communicating a superseding signal from an adapter module to a bus coupled to the first computer and the originally provided memory, with the result of altering control of the engine by the first computer" |

---

[2] The Court notes that its interpretation of this term does not require that the device permit switching between modes while the vehicle is in operation, which was the aim of a much earlier, more primitive version of the invention.

| | |
|---|---|
| "selectively controlling said engine by means of said first computer through at least one additional programmed mode provided by said adapter module, said additional programmed mode not being originally included in said originally provided memory" | "making a decision to switch control of the engine from the programmed mode provided in the originally provided memory to the additional programmed mode provided by the adapter module, with the adapter module remaining coupled to the bus such that control of the engine can be switched back and forth between the originally provided programmed mode and the additional programmed mode" |

### IV.   SUMMARY JUDGMENT

Defendants have moved for summary judgment on the grounds of non-infringement and invalidity of claims 1, 5, and 19 of the '948 patent. The Court finds that summary judgment for Defendants is appropriate as to claims 1 and 5, on the ground of non-infringement, and as to claim 19, on the ground of invalidity.

#### A.   Claims 1 and 5

As construed by the Court, claim 1 requires the device to be permanently installed in a vehicle. Insofar as the accused products are not so affixed to the vehicles that they modify – that is, insofar as they are similar to the "stationary piece[s] of shop equipment" from which Plaintiff distinguished his invention during the prosecution of the parent patent to the '948 patent – they do not infringe claim 1. Defendants have introduced summary judgment evidence demonstrating that their products do not become permanent parts of the vehicles that they reprogram. (*See* Defendants' Mot. For Summ. J. (Docket No. 37), Ex. 35 (Decl. of Steve Madole), at 1-2; Edge Products, LLC's Mot. for Summ. J. (Docket No. 49), Ex. 1 (Decl. of William Cohron), at 2.) Plaintiff has introduced no rebuttal evidence and, indeed, has conceded that it has none. (*See* Pl.'s Resp. to Defs.' Mot. for Summ. J. (Docket No. 45) at 16 ("Adrain does not know the details of how each of the 11 products interacts with the engine control module . . . .").)

14

As Defendants correctly point out, Rule 11 requires counsel for a plaintiff alleging patent infringement to investigate the accused device(s) before filing suit. *See Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) ("Patent infringement is a question of fact. . . . An attorney's allegation of infringement is therefore subject to the requirement of Rule 11(b)(3) that all allegations and factual contentions have evidentiary support."); FED. R. CIV. P. 11(b)(3). This rule allows the assertion only of claims that a reasonable attorney would make, "based on some actual evidence uncovered during a prefiling investigation." *Id.* Because Plaintiff has offered no evidence to show that the accused devices are permanently attached to the vehicles on which they operate, and because Defendants have produced evidence that the products are no so affixed, the Court finds that Defendants' devices do not infringe claim 1.

Claim 5 depends from claim 1, and therefore a product that does not infringe claim 1 cannot infringe claim 5. *See Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1299 (Fed. Cir. 2002) (noting the "apparent inconsistency in having independent claim 1 neither infringed nor anticipated, while dependent claim 9 is both infringed and anticipated" and stating that, "[w]hile Schrödinger's cat may be both alive and dead at any given moment, even in theory, claim limitations cannot be concurrently both met and not met"). The Court therefore finds that Defendants' products do not, as a matter of law, infringe claim 5.

### B. Claim 19

Defendants first argue that the accused products do not infringe claim 19, because they do not meet the "superseding signal" limitation. Defendants also contend that claim

15

19 is invalid because it was anticipated by a prior U.S. patent. The Court examines each argument in turn.

### 1.     Infringement.

Defendants' argument for non-infringement is based upon their preferred construction of claim 19's "superseding signal" language as requiring that both the originally provided memory and the additional preprogrammed memory simultaneously send signals to the ECM. (*See* Defs.' Mot. for Summ. J. on Claims 5 and 19 at 5-6.) According to Defendants, because the accused devices are disconnected after reprogramming an ECM, they cannot send a superseding signal that alters the operation of the ECM while the vehicle is in use.

The construction adopted by the Court does not, however, incorporate Defendants' suggested limitation. Instead, as stated above, the Court reads "superseding signal" to mean a signal sent from the additional memory to the ECM, whether or not any other signal is simultaneously sent by any other memory. The rationale advanced for Defendants' non-infringement argument therefore fails, and summary judgment on this ground is inappropriate.

### 2.     Invalidity.

A party seeking to invalidate a patent bears the burden of overcoming the presumption of validity created by 35 U.S.C. § 282, by presenting "clear and convincing evidence" of anticipation or obviousness. *Medtronic Inc. v. Intermedics, Inc.*, 799 F.2d 734, 741 (Fed. Cir. 1986). Defendants argue that claim 19 is invalid because it was anticipated by U.S. Patent No. 5,278,759 (the "Berra patent").

16

The Berra patent was issued on May 7, 1991. It describes a device for reprogramming an ECM via a vehicle's diagnostic port. Defendants argue that the Berra patent meets each and every limitation of the '948 patent. Plaintiff contends that the Berra patent does not anticipate the '948 patent, because it does not disclose the retention of the vehicle's originally provided memory.

Plaintiff's position is based upon a misreading of the Berra patent, which refers at least twice to the possibility of preserving the originally provided memory during and after reprogramming. (*See* Defs.' Mot. for Summ. J. on Claims 5 and 19, Ex. 1, at 11, Col. 4, lines 24-29 ("In one form of the present invention, the reprogramming method follows a predetermined transfer protocol which assists in preventing the existing computer program code stored in the non-volatile memory from being improperly erased or re-written."), 57-62 ("Once it is determined that it is appropriate to reprogram this non-volatile memory with the computer program code contained in the plug-in module of the diagnostic tool, the existing computer program code in the non-volatile memory of the on-board vehicle computer is *preferably* erased.") (emphasis added).) Thus, the Berra patent meets every limitation of the '948 patent, which is therefore invalid.

### C.     Conclusion

The Court finds that Defendants' products do not infringe claims 1 and 5 of the '948 patent. The Court further finds that claim 19 of the '948 patent is invalid because it was anticipated by the Berra patent. Accordingly, summary judgment is hereby **GRANTED** for Defendants on all of Plaintiff's claims, which are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 14th day of March, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**